PUBLISH

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

-------------------------------------------

No. 97-3432

-------------------------------------------

D. C. Docket No. 94-CR-01009-MMP

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
05/14/99
THOMAS K. KAHN
CLERK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

F. LEE BAILEY,

Defendant-Appellant.

----------------------------------------------------------------

Appeal from the United States District Court
for the Northern District of Florida

----------------------------------------------------------------

**(May 14, 1999)**

Before EDMONDSON and CARNES, Circuit Judge, and WATSON*, Senior Judge.

_____

\* Honorable James L. Watson, Senior Judge, U. S. Court of International Trade, sitting by designation..

PER CURIAM:

Appellant, F. Lee Bailey ("Bailey") says that 28 U.S.C. §§ 455(a), 455(b)(1) required the district court judge, Judge Paul, to recuse himself in the proceedings below. Bailey also disagrees with the district court's determination of reasonable expenses incurred as part of Bailey's representation of a criminal defendant. Judge Paul was not required to recuse himself, but we see one significant error in the district court's determination of expenses. So we affirm in part and vacate and remand in part.

Background

In 1994, Bailey -- a lawyer -- agreed to represent Claude Duboc ("Duboc"). Duboc eventually pled guilty to crimes that involved importing illegal drugs. As a result, Duboc's extensive property became subject to forfeiture. To liquidate the property, Bailey and the government entered into what seems to be a vague and unusual agreement. Under the agreement, 602,000 shares of stock in a Canadian company, Biochem Pharma, were made available to Bailey for his use in liquidating other assets of Duboc and for his meeting other defense-related expenses. During the course of Bailey's duties, the value of the Biochem Pharma stock increased significantly.

At one time, Bailey contested ownership of the Biochem Pharma stock. He argued that the government had given him the stock in fee simple and not in trust. Bailey dismissed that claim in May 1996.

2

Before May 1996, Bailey spent the money from the sale of some Biochem Pharma stock on items for Duboc, for his defense of Duboc, for liquidating Duboc's property, and for other purposes. Money spent on Duboc included money for Duboc's hip surgery, for clothing, for a personal assistant (Karen Albert), and for outside legal fees. Money spent by Bailey also included air travel for himself.

When Duboc replaced Bailey with another lawyer, the district court (at the government's request) ordered Bailey to deliver the remaining Biochem Pharma stock to the court. When Bailey did not comply, the district court jailed Bailey for contempt. Bailey was released after 44 days when he substantially complied with the order.

The district court then ordered a complete accounting of expenditures and reviewed the expenditures. The district court determined that Bailey incurred $1,221,177.06 in legitimate, reimbursable expenses. Because Bailey already had spent more than this amount, however, Bailey was ordered to pay $423,737.77 to the court.

Discussion

Bailey raises two issues in this appeal. First, he says the district court judge, Judge Paul, should have recused himself under section 455(a) and section 455(b)(1).[1] Second,

---

[1]Section 455(a) provides that "[a]ny . . . judge . . . shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Section 455(b)(1) provides that a judge must recuse himself if "he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the

Bailey believes he incurred more reimbursable expenses than those expenses for which he was reimbursed.

I.    Recusal

We review Judge Paul's decision not to recuse himself under section 455(a) and section 455(b) for abuse of discretion.  See Wu v. Thomas, 996 F.2d 271, 274 (11th Cir. 1993).

According to Bailey, a number of Judge Paul's acts demonstrate partiality.  None of these acts stem from an extrajudicial source, however.  Bias sufficient to disqualify a judge under section 455(a) and section 455(b)(1) must stem from extrajudicial sources, unless the judge's acts demonstrate "such pervasive bias and prejudice that it unfairly prejudices one of the parties." United States v. Ramos, 933 F.2d 968, 973 (11th Cir. 1991).

We cannot say the incidents cited by Bailey are examples of pervasive bias and prejudice.  And considering that the standard of review is abuse of discretion, we will affirm a district judge's refusal to recuse himself unless we conclude that the impropriety is clear and one which would be recognized by all objective, reasonable persons.

_____

proceeding."

Bailey relies chiefly on three things.[2]  First, Bailey thinks Judge Paul demonstrated sufficient bias or prejudice by ordering Bailey's appearance in the district court while Bailey was preparing for an unrelated criminal trial.  After a review of the record, we conclude that -- if Bailey was as severely hampered by Judge Paul's order as he now says -- it was not made clear to Judge Paul at the pertinent time.

Bailey's letter of 21 January 1996 to Judge Paul, although discussing his schedule in the other trial, did not suggest that the hearing date eventually selected by Judge Paul was problematic.  In fact, Bailey said "I would like to appear before Your Honor at the earliest opportunity."  Moreover, Judge Paul said he never read the letter because it was not a motion.  Judge Paul could not, therefore, have been acting in a biased or prejudiced manner by requiring Bailey's appearance.  Also, we doubt that Judge Paul should have much considered Bailey's need to be ready for another trial that was weeks away: most lawyers are busy.

Second, Bailey says Judge Paul left him in jail for contempt longer than necessary. The record reveals, however, that even upon release Bailey had not fully complied with Judge Paul's order.  So, Bailey's release was early, not late.  The release, therefore, tends to disprove -- rather than support -- Bailey's bias and prejudice claim.

---

[2]Bailey cites other comments and acts by Judge Paul unrelated to these three events. We have reviewed the other comments and acts, and we conclude that they do not demonstrate the requisite bias or prejudice.

5

Third, Bailey says Judge Paul demonstrated his bias against him by the judge's rulings in the proceedings dealing with the ownership of the Biochem Pharma stock. After reviewing the record, we cannot conclude that Judge Paul was pervasively biased or prejudiced against Bailey. Many of Bailey's motions were granted, and the district court made special efforts (within reason) to accommodate the wishes of Bailey and his lawyers.[3] Given our review of the record, including the hearing transcripts, we cannot say that Judge Paul was less than fair and even-handed in the proceedings. *Judge Paul's occasional* sharp comments were nothing more than the reasonable (and restrained) reactions of a trial court judge dealing with a difficult case.

Bailey makes another recusal argument under section 455(b)(1). He argues that Judge Paul acquired personal knowledge of facts relevant to the stock-ownership dispute when Judge Paul met with the parties in chambers and discussed the matter of the stock's being made available to Bailey: In chambers seems to have been where the agreement was first announced. But, whatever knowledge Judge Paul gained about the stock's ownership was acquired in the course of a judicial proceeding. See United States v. Sims, 845 F.2d 1564, 1570 (11th Cir. 1988) (in camera hearing is not extrajudicial); United

---

[3]For example, Judge Paul allowed Bailey to extend deadlines, admitted a lawyer pro hac vice for Bailey, let Bailey leave incarceration despite Bailey's failure to comply completely with the contempt order, granted Bailey's discovery requests, and made other discretionary decisions in Bailey's favor.

States v. Page, 828 F.2d 1476, 1481 (10th Cir. 1987) (knowledge of disputed evidentiary fact must be gained extrajudicially to require recusal). So, Judge Paul's alleged knowledge of a disputed evidentiary fact does not require recusal in this case.

We also note that Bailey, in his brief, seems to ask us to decide the merits of the stock-ownership issue in the course of deciding the question of Judge Paul and prejudice. But Bailey has abandoned his claim to the stock in this case,[4] and we are unwilling to allow his recusal motion to open that claim again.

## II. Expenses

Bailey's situation is unusual. We have no statute, or binding precedent, therefore, to direct us in our review of the district court's determination of reimbursable expenses. District courts often determine appropriate expenses in bankruptcy proceedings, however, and we review these determinations occasionally. So, we look to those cases for the right legal standard and standard of review.

---

[4]Bailey dismissed his claim to the stock in district court. But Bailey was, and may still be, pursuing his claim to the Biochem Pharma stock in the Court of Federal Claims. See Bailey v. United States, 40 Fed. Cl. 449 (1998).

When a district court judge "find[s] that claimed expenses were not actually incurred, did not sufficiently relate to the case, were unnecessary, or were excessive,[5] we . . . overturn his determination only if convinced the findings were 'clearly erroneous' -- a very high standard[.]" In re Hillsborough Holdings Corp., 127 F.3d 1398, 1401 (11th Cir. 1997).

Bailey takes issue with several of the district court's expense determinations. We see no clear error, after reviewing the pertinent testimony and pleadings, in the district court's expense decisions about the rate of reimbursement for Bailey's corporate jet,[6] the payments made to other lawyers, and the Karen Albert expenses.

Bailey also argues that he should be reimbursed for the payments he made to pay for Duboc's hip surgery. In its order, the district court found "that the sole reason prosecutors agreed to allow Bailey to arrange Duboc's surgery was that such an arrangement would save the Government money." The district court credited the affidavit of Assistant U.S. Attorney Hankinson who said that Bailey was told he would have to pay for "all" medical expenses if Duboc didn't use a government-contracted hospital. The

---

[5]Although no party raises this issue, we note that this standard is practically identical to the standard used by the district court. The district court refused to reimburse unreasonable expenses, including expenses for unnecessary or extravagant travel and meals and also refused to reimburse Bailey for expenses unrelated to his representation of Duboc and his liquidation of Duboc's assets.

[6]Bailey was reimbursed at the regulatory rate of eighty-five cents a mile. This is the rate the government reimburses anyone authorized to travel at government expense using a privately-owned airplane. See 41 C.F.R. § 301-10.303 (1998).

district court's finding is in the nature of finding an oral contract between Bailey and the government; we do not think that finding is clearly erroneous. So, Bailey is not entitled to be reimbursed, even partially, for Duboc's surgery.

We see clear error for one finding of the district court. The district court did not reimburse Bailey for the $1013.29 suit Bailey bought Duboc at Neiman Marcus for Duboc's Canadian court appearance. We will accept that spending over $1000 for a suit -- at government expense -- might be unreasonable, but we think Bailey deserves to be repaid for the cost of a less expensive suit. No one disputes that dressing one's client for court appearances can be important to the success of the court appearance.

On remand, we anticipate that the district court will see that Bailey receives the cost of a reasonable suit. But, the district court may, if it wishes, first determine whether Duboc, in fact, did not have time to bring another suit with him for his appearances as a government witness in a Canadian court and (if so) whether Bailey is, therefore, responsible for the cost of the suit.

The district court's decisions, for the reasons given, are affirmed on all issues, except the reimbursement of the suit-of-clothing expense.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.