Stephen R. GLASSROTH, Plaintiff,

v.

Roy S. MOORE, Chief Justice of the Alabama Supreme Court, Defendant.

Melinda Maddox and Beverly Howard, Plaintiffs,

v.

Roy Moore, in his official capacity, Defendant.

Nos. CIV.A. 01–T–1268–N, CIV.A. 01–T–1269–N.

United States District Court, M.D. Alabama, Northern Division.

Oct. 11, 2002.

J. Richard Cohen, Morris S. Dees, Jr., Rhonda Brownstein, Danielle Jeannine Lipow, Southern Poverty Law Center, Montgomery, AL, James A. Tucker, Alabama Disabilities Advocacy Program, Tuscaloosa, AL, for Stephen R. Glassroth.

Robert M. Weinberg, ACLU of Alabama, Montgomery, AL, William Z. Messer, Robert J. Varley, Varley & Messer, LLP, Montgomery, AL, for Beverly J. Howard, C. Wade Johnson, Robert A. Beckerle, Melinda Maddox.

Ayesha Khan, Americans United for Separation of Church and State, Washington, DC, for C. Wade Johnson.

Herbert W. Titus, Troy A. Titus PC, Virginia Beach, VA, D. Stephen Melchior, Deputy AG for State of Alabama, Phillip Jauregui, Birmingham, AL, for Roy S. Moore.

John J. Park, Jr., Charles B. Campbell, Office of Atty. General Alabama State House, Montgomery, AL, for Rich Hobson.

## ORDER

MYRON H. THOMPSON, District Judge.

These lawsuits, consolidated for trial, were brought by plaintiffs Stephen Glassroth, Melinda Maddox, and Beverly How-

ard against defendant Roy Moore, Chief Justice of the Alabama Supreme Court. The plaintiffs contend that Justice Moore's placement of a monument, engraved with the Ten Commandments and quotations from other texts, in the Alabama State Judicial Building violates the first and fourteenth amendments to the United States Constitution, as enforced through 42 U.S.C.A. § 1983. Currently this case is before the court on Justice Moore's motion pursuant to 28 U.S.C.A. §§ 144 and 455(a) that I recuse myself. For the reasons that follow, this motion will be denied.

I.

There are two federal recusal statutes that govern claims of bias, prejudice, or partiality with respect to a judge. Justice Moore moves for my recusal pursuant to both statutes, 28 U.S.C.A. § 144 and § 455(a).

Section 144 states:

"Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding."

Once an affidavit is filed, "the trial judge may not pass upon the truthfulness of the facts stated in the affidavit even when the court knows these allegations to be false." *United States v. Alabama*, 828 F.2d 1532, 1540 (11th Cir.1987), *cert. denied*, 487 U.S. 1210, 108 S.Ct. 2857, 101 L.Ed.2d 894 (1988). Instead, the judge's inquiry is limited to determining whether the facts alleged are legally sufficient to require recusal. For an affidavit to be legally sufficient, the party must show that "(1) The facts are material and stated with particularity, (2) The facts are such that, if true they would convince a reasonable person

that a bias exists and (3) The facts must show the bias is personal, as opposed to judicial in nature." *Id.*

As stated, Justice Moore also brings this motion pursuant to § 455(a), which states that, "Any justice, judge or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." This statute "places a judge under a self-enforcing obligation to recuse himself where the proper legal grounds exist." *United States v. Alabama*, 828 F.2d at 1540. Legal grounds exist for recusal when "an objective disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1524 (11th Cir.1988). Actual prejudice need not be shown, as "Congress expressly intended ... § 455 to promote public confidence in the impartiality of the courts by eliminating even the appearance of impropriety." *United States v. Alabama*, 828 F.2d at 1541.

Under both recusal statutes, the Supreme Court has held that a significant and often "determinative" factor in these cases is the "extrajudicial source" doctrine. *Liteky v. United States,* 510 U.S. 540, 555, 114 S.Ct. 1147, 1157, 127 L.Ed.2d 474 (1994). Under this doctrine, the alleged bias must stem from information that the judge has gained from outside the judicial context. This usually precludes a finding of bias based on a judge's rulings and remarks during the course of trial, because these are assumed to come from the information the judge learned during trial, not extrajudicial sources. *Id.* at 554, 114 S.Ct. at 1157; *see also Davis v. Bd. of Sch. Comm'rs*, 517 F.2d 1044, 1052 (5th Cir. 1975).

The Eleventh Circuit has explicitly approved of the extrajudicial source doctrine: "The general rule is that bias sufficient to disqualify a judge must stem from extrajudicial sources, and must be focused against a party to the proceedings. An exception to this rule is made when a judge's remarks in a judicial context demonstrate such pervasive bias and prejudice that it constitutes bias against a party." *Hamm v. Members of the Bd. of Regents,* 708 F.2d 647, 651 (11th Cir.1983) (internal citations omitted); *see also Thomas v. Tenneco Packaging Co.,* 293 F.3d 1306, 1329 (11th Cir.2002) (relying on extrajudicial source doctrine to affirm denial of recusal motion); *Christo v. Padgett,* 223 F.3d 1324, 1333–34 (11th Cir.2000) (same). ■ The Eleventh Circuit has articulated an additional important principle to be considered in recusal cases: although the duty to recuse is imperative in close cases, "[j]udges must not recuse themselves for imaginary reasons; judge shopping should not be encouraged." *Murray v. Scott,* 253 F.3d 1308, 1313 (11th Cir.2001); *see also Carter v. West Publ'g Co.,* 1999 WL 994997, *2 (11th Cir.1999) (Tjoflat, J.) (addendum to pro forma order denying plaintiffs' recusal motion) (stating that there are dual policies underlying a recusal motion, the obligation to recuse in close cases, and the obligation to hear cases when proper); *United States v. Greenough,* 782 F.2d 1556, 1558 (11th Cir.1986) (same).

## II.

### A. Section 144

■ In support of his motion to recuse, Justice Moore argues that I have demonstrated an actual personal bias and prejudice against him, that warrants my recusal under § 144. In his affidavit, he alleges that I have disregarded his judicial calendar, commitments, and other obligations as Chief Justice of the Alabama Supreme Court during the scheduling of the trial date in this case. Specifically, Justice Moore claims that I am biased because, during a July 2002 hearing, I did not inquire into his other obligations when I denied his motion to reset the jointly agreed upon trial date of this case. He also argues that, during a September 2002 conference call, I inquired into the plaintiffs' schedules, but not his scheduling conflicts, when assessing whether it might be necessary to postpone the trial in order to issue the summary-judgment decision before trial. Even taking these allegations as true, the court finds that they are insufficient to "convince a reasonable person that a bias exists" and, even if they did, it would not "show the bias is personal, as opposed to judicial, in nature." *United States v. Alabama,* 828 F.2d at 1540.

In *United States v. Bailey,* 175 F.3d 966, 968 (11th Cir.1999), the Eleventh Circuit upheld the denial of a motion to recuse which was based, in part, on the judge's order that the attorney appear in court while the attorney was preparing for an unrelated criminal trial. In doing so, the court stated "we doubt that [the judge] should have much considered" the scheduling needs of the attorney. *Id.* at 968. Although *Bailey* involved the attorney's schedule, the general principle that the judge does not demonstrate bias by disregarding the scheduling needs of a party is applicable to this case. Therefore, even if I disregarded Justice Moore's schedule, it does not follow that it demonstrates any bias against him. Additionally, taking the second part of Justice Moore's argument as true, that I inquired about the plaintiffs' schedule, and not his, during the September 2002 conference call, this perceived slight does not rise to the level of "deep seated favoritism or antagonism that would make fair judgment impossible," and would not cause a reasonable person

to assume I was biased against Justice Moore.

However, even assuming that a reasonable person could believe that my actions demonstrated bias in this case, "[i]t is settled that the requisite bias and prejudice under § 144 must be extrajudicial," unless a showing of "pervasive bias and prejudice" can be made. *Davis v. Bd. of Sch. Comm'rs*, 517 F.2d 1044, 1051 (5th Cir. 1975). In the affidavit underlying this motion, all showings of bias derive from my comments during hearings, which are not extrajudicial. *See, e.g., Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 1157, 127 L.Ed.2d 474 (1994) (holding that judicial decisions, and "judicial remarks ... ordinarily do not support a bias or particularity charge" and only "may" do so if based on extrajudicial sources); *Christo v. Padgett*, 223 F.3d 1324, 1333–34 (11th Cir.2000) (holding judicial comments were not extrajudicial, nor were newspaper articles filed with the court); *Jaffe v. Grant*, 793 F.2d 1182, 1188–89 (11th Cir.1986) (same); *United States v. Meester*, 762 F.2d 867, 885 (11th Cir.1985) (same). These cases hold that a demonstration of actual bias sufficient to invoke § 144 must be based on something other than judicial proceedings, unless the bias is pervasive. In this case, the allegations of bias are not based on extrajudicial sources, nor do they rise to the level of demonstrating pervasive bias.

Therefore, even if taken as true, the allegations regarding my actions during the scheduling of this case do not merit my recusal under § 144, and amount to nothing more than "a judge's ordinary efforts at courtroom administration ... [which]

remain immune" from charges of bias. *Liteky*, 510 U.S. at 555–56, 114 S.Ct. at 1157.

### B. Section 455(a)

In support of his motion for recusal under § 455(a), Justice Moore states two grounds requiring my recusal. First, he asserts that my disregard for his schedule, as described above, demonstrates partiality. Second, he states that, based on a letter written on July 16, 2002, by counsel for the plaintiffs, an appearance of impropriety exists that warrants my recusal.

Justice Moore's argument about my actions during the scheduling of this case fails to demonstrate that "an objective disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1524 (11th Cir.1988).

First, a fully informed observer would know that, although I denied Justice Moore's July 2002 request to reset the trial date, I did grant his motion in other respects, such as extending the discovery deadlines.[1] Additionally, on August 29, 2002, I granted Justice Moore's motion to suspend proceedings in the midst of trial to accommodate his schedule.[2] *See Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1330 (11th Cir.2002) (relying on "other actions of the district judge [that] point to his objectivity and neutrality throughout" the case to find charge of partiality unwarranted). Second, during the July 2002 hearing, in which Justice Moore alleges that I did not ask about his schedule, his counsel was given ample opportunity to bring up any scheduling conflicts and failed to do so.[3] Justice Moore's counsel

---

1. Order, filed July 15, 2002 (Doc. no. 55).

2. Order, filed August 29, 2002 (Doc. no. 73).

3. Transcript of July 15, 2002, Hearing on Defendant's Motion to Modify Joint Report and to Enlarge Deadlines at 10 ("Anything else, Counsel?"); *id.* at 11 (same); *id.* at 17 (same).

was specifically asked when he realized the deadlines needed to be extended and why the extension was necessary. In response, counsel never responded by bringing up any particular conflicts with Justice Moore's schedule.[4]

Third, during the September 2002 conference call, at no time did the court indicate it would not consider arguments regarding Justice Moore's schedule when deciding whether to reset the trial date, and his lawyers were repeatedly asked if they had anything else to add to the arguments.[5] Furthermore, at the September 2002 hearing, resetting the trial date was discussed but, in fact, the trial date was not reset, and counsel was informed that the matter would be revisited during the pretrial conference.[6] Finally, the extrajudicial doctrine applies to charges of partiality under § 455(a), and as discussed under the § 144 analysis, these actions are not extrajudicial, nor do they demonstrate "pervasive bias" against Justice Moore.

As the final ground necessitating my recusal, Justice Moore argues that a letter written on July 16, 2002, by plaintiffs' counsel, raises an appearance of impropriety. The part of the letter that Justice Moore bases his claim on states, "This is the story that will make this case so dirty that no appeals court will reverse Thompson to make new law." [7] In his motion for recusal, it was unclear whether Justice Moore was alleging that this letter raised the appearance of impropriety, or that it demonstrated some collusion on my part with plaintiffs' counsel. During oral argument on the motion to recuse, Justice Moore was consulted by his counsel, and it was determined that no allegation of collusion was being made, and that it was therefore not necessary for another judge to rule on this motion.[8]

The court finds that this letter would not cause a reasonable person to doubt *my* impartiality, as I did not write it, and it contains no reference to any actions on my part that formed the basis of this state-

---

4. *Id.* at 11–17.

5. Transcript of September 26, 2002, Conference Call on Plaintiff's Motion for Summary Judgment at 49 ("Is there anything else you would like to say?"); *id.* at 56 ("Anything else, Counsel, before I hang up?"); *id.* at 61 ("Anything else, Counsel?").

6. *Id.* at 57.

7. The letter was written by one of plaintiffs' counsel to co-counsel, and the body reads in part:

"I was opposed to filing a summary judgment motion because I felt the best way to present this case was with a good pre-trial brief. I also felt it would be a useless effort since Judge Thompson made it clear in our first telephone conference that he discouraged such a motion. I finally agreed to join the summary judgment motion as an effort to let the court know that all plaintiffs were in agreement. I spent many hours providing you will [sic] a detailed statement of facts.

"Now that no summary judgment motion will be filed, I assumed that there would be no objection to us doing the pre-trial brief. I am sure that your grasp on the legal issues is excellent and will be incorporated. I also know that I am a trial lawyer and believe one of my strengths is in telling a story, at least that is what I am told. A judge is nothing more than a jury when it comes to the facts. You might remember that, from the start, I was laying our trial theme, i.e., how this was the act of a lone religious nut in partnership with a fanatical church. This is the story that will make this case so dirty that no appeals court will reverse Thompson to make new law. Moore's purpose and intent and the effect of the TCM are easy to prove."

8. Transcript of October 1, 2002, Pre–Trial Conference at 21–22. Nonetheless, I made clear to counsel that I had had no contact with the plaintiffs' counsel, either direct or indirect, outside the formal context of the litigation with all counsel present. *Id.* at 13–14.

ment by plaintiffs' counsel. Furthermore, although Justice Moore bases his claim on one sentence of the letter, reading this sentence in the context of the whole letter, reveals that plaintiffs' counsel was not implying that I had already made a ruling on this case, but that because of his trial skills, he would be the best person to argue the case to achieve plaintiffs' desired result. There is no basis for a reasonable person to find an appearance of impropriety from this letter, as the letter is a statement by plaintiffs' counsel regarding his assessment of the strategy and strengths of the case. *See In re Martinez–Catala,* 129 F.3d 213, 218–19 (1st Cir.1997) (holding that defense counsel's statement to plaintiffs' counsel, after ex parte contacts, that "convey[ed] the impression that he knew how the judge would rule" only amounted to "an intelligent prediction" or "puffing a bit to enhance his bargaining position" and did not demonstrate bias or prejudice on the part of the judge). There is no indication or allegation that this statement reflected or was based on anything other than the opinion of its speaker.[9]

Furthermore, if the court considered this statement by plaintiffs' counsel as proper grounds for my recusal, it would be authorizing third parties, namely the lawyers in this case, to coerce judges into granting recusal motions, either by making such a statement, or by presenting it to the court. This is contrary to the policy of this circuit. In *United States v. Gree-*

*nough,* 782 F.2d 1556 (11th Cir.1986), the Eleventh Circuit stated that:

> "If a party could force recusal of a judge by factual allegations, the result would be a virtual 'open season' for recusal . . . A second policy is that a judge, having been assigned to a case, should not recuse himself on unsupported, irrational, or highly tenuous speculation. If this occurred the price of maintaining the purity of the appearance of justice would be the power of litigants or third parties to exercise a veto over the assignment of judges."

782 F.2d at 1558; *see also Murray v. Scott,* 253 F.3d 1308, 1313 (11th Cir.2001) ("Judges must not recuse themselves for imaginary reasons; judge shopping should not be encouraged."); *Sullivan v. Conway,* 157 F.3d 1092, 1096 (7th Cir.1998) ("It is improper for a lawyer or litigant . . . to *create* the ground on which he seeks the recusal of the judge assigned to his case. That is arrant judge-shopping.") (emphasis in original).

■ In sum, my actions in this case do not demonstrate any actual bias or partiality on my part against Justice Moore nor do they create the appearance of impropriety. Instead, they "are inadequate under the principles" described in cases by both the Supreme Court and the Eleventh Circuit to infer any actual or perceived bias. *Liteky v. United States,* 510 U.S. 540, 556, 114 S.Ct. 1147, 1158, 127 L.Ed.2d 474 (1994). "They consist of judicial rulings, routine trial administration efforts

---

**9.** Additionally, the court notes that the delay between Justice Moore receiving this letter, and bringing the motion to recuse further supports the court's view that this letter does not raise any appearance of impropriety. In *Bivens Gardens Office Building, Inc. v. Barnett Banks of Florida, Inc.,* 140 F.3d 898, 913 (11th Cir.1998), the Eleventh Circuit upheld the district court's ruling that the plaintiff had waived the issue, as he did not raise the issue

"at the first available opportunity," and waited three months before moving to recuse the judge. Justice Moore's attorneys' received this letter two and a half months before filing this motion, Def.'s Mot. to Recuse, Moore Aff. at ¶ 2, and although this court does not reach the issue of whether they have waived the issue by waiting, this factor does weaken any argument that this letter created an appearance of impropriety.

... [a]ll occur[ing] in the course of judicial proceedings" and none "displaying deep-seated and unequivocal antagonism that would render fair judgment impossible." *Id.*

### III.

After careful and serious consideration of Justice Moore's arguments, the court finds that there are no grounds for recusal under either 28 U.S.C.A. § 144 or § 455(a).

Accordingly, it is ORDERED that defendant Roy Moore's motion for recusal, filed on October 1, 2002 (Doc no. 97), is denied.