[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 15, 2007
THOMAS K. KAHN
CLERK

No. 06-14824
Non-Argument Calendar

_____

D. C. Docket No. 03-00527-CV-FTM-99-SPC

BRIAN BEVAN,

　　　　　　　　　　　　　　　　　　　Plaintiff-Appellant,

versus

MARK DURLING, Chief,
KENNETH EARN, individually and in his official
capacity as captain for the Lee County Sheriff's Office,
SCOTT STAUDER, individually and in his official
capacity  as corporal for the Lee County Sheriff's Office,
ROD SHOAP, individually and as former deputy
Sheriff for the Lee County Sheriff's Office,
RICHARD COWART, JACKIE COWART,
ROSS DI PASQUALE,
in his individual capacity and as the detective
for the Sheriff of Lee County, et al.,

　　　　　　　　　　　　　　　　　　　Defendants-Appellees,

DAVE WILSON, Colonel Dave Wilson,
individually and in his former capacity as colonel
of the Lee County Sheriff's Department, et al.,

　　　　　　　　　　　　　　　　　　　Defendants.

———————————————

Appeal from the United States District Court
for the Middle District of Florida
———————————————

**(June 15, 2007)**

Before TJOFLAT, ANDERSON and HULL, Circuit Judges.

PER CURIAM:

Brian Bevan appeals pro se the district court's final orders in his suit against (1) seven members of the Sheriff's Office, the current Sheriff and the former Sheriff; (2) five state attorneys; and (3) sixteen of Bevan's neighbors, brought under 42 U.S.C. § 1983 and state law.

Bevan's lawsuit stemmed from disputes with his neighbors, and the subsequent arrest and prosecution of Bevan for simple assault. The jury found him not guilty. Bevan filed his initial complaint against the neighbors, law enforcement officers, and prosecutors on September 12, 2003, which was dismissed without prejudice. Bevan moved numerous times to amend his complaint, and the court ultimately granted the filing of Bevan's fourth amended complaint. Bevan's fourth amended complaint ("complaint"), named Rod Shoap, the current Lee County Florida Sheriff; John McDougal, the former Lee County Sheriff; law enforcement officers Mark Durling, Kenneth Earn, Ross Di Pasquale, Brian Foell, Scott

2

Stauder, and Mr. Hundall, all members of the Lee County Sheriff's Office ("law enforcement officers"); George Mitar, another Sheriff's deputy; state prosecutors Bruce Kyle, Dean Platner, Joseph Viacava, Anoush Arakalian, and Joe D'Allasandro, ("state attorneys"); and his neighbors Joel and Ursula Wolfson, Julie Nieminski, Mr. Nieminski, Joseph and Marilyn Dufrat, Mr. and Mrs. Bakhtian, Richard and Jackie Cowart, Claudia Cowart, Jan Campbell, Dr. and Mrs. Douglas Henricks, Mrs. John McSweeney, and the Estate of John McSweeney ("neighbors").[1]  Bevan raises several issues challenging the magistrate judge's denial of Bevan's motion for recusal and denial of Bevan's thirty motions to compel.  Bevan also raises several issues challenging the district court's decisions granting the state attorneys' motion to dismiss, granting partial summary judgment to the Nieminskis, Dufrats, Wolfsons, and Mrs. McSweeney prior to the discovery deadline, dismissing the Estate of John McSweeney, and granting summary judgment to the neighbors and law enforcement officers on Bevan's claims under 42 U.S.C. § 1983.  Each decision is addressed in turn.

I.       **Denial of Motion for Recusal**

Bevan, appealing <u>pro se</u>, argues that the magistrate judge erred by refusing

---

[1]  Bevan named Dave Wilson in his first complaint.  The court dismissed all claims against  Dave Wilson without prejudice, and Bevan never named Wilson in his subsequent complaints.

to recuse herself on account of her alleged "past criminal actions" and he argues that the judge's decisions were not fair, just or impartial.

We review a denial of a motion for recusal for abuse of discretion. United States v. Bailey, 175 F.3d 966, 968 (11th Cir. 1999). Under this standard, we will affirm the refusal to recuse unless we "conclude that the impropriety is clear and one which would be recognized by all objective, reasonable persons." Id.

Under 28 U.S.C. § 455(a),[2] a federal judge, including a magistrate, must disqualify herself if her "impartiality might reasonably be questioned." In deciding whether a judge should recuse herself under § 455(a), we determine whether "an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." United States v. Patti, 337 F.3d 1317, 1321 (11th Cir. 2003) (citation omitted).

Section 455(b) requires disqualification under specific circumstances, including situations where a judge has a personal bias or prejudice concerning a party, has participated as counsel in the matter, or has a financial interest in the matter. 28 U.S.C. § 455(b)(1), (2), (4). The Supreme Court has held that where a judge's challenged actions "consist[ed] of judicial rulings, routine trial

---

[2] Because it is unclear whether Bevan relied on 28 U.S.C. § 455(a) or (b) for his motion for recusal, we addresses both.

4

administration efforts, and ordinary admonishments (<u>whether or not legally supportable</u>) to counsel and to witnesses," these actions were not sufficient to require a judge to recuse herself under § 455. <u>Liteky v. United States</u>, 510 U.S. 540, 556, 114 S.Ct. 1147, 1158, 127 L.Ed.2d 474 (1994) (emphasis added). Moreover, in <u>Liteky</u>, all of the challenged actions "occurred in the course of judicial proceedings, <u>and</u> neither (1) relied upon knowledge acquired outside such proceedings nor (2) displayed deep-seated and unequivocal antagonism that would render fair judgment impossible." <u>Id.</u> (emphasis in original).

Here, the magistrate judge did not abuse her discretion in denying Bevan's motion for recusal under 28 U.S.C. § 455(a) or (b) because Bevan provides no evidence to establish that the magistrate judge had any personal bias against him. For example, he provides no evidence that the magistrate judge knew that he was attempting to expose her allegedly criminal activities, or, even if she did know, how that affected her rulings. <u>See</u> <u>Switzer v. Berry</u>, 198 F.3d 1255, 1258 (10th Cir. 2000) (persuasive authority) (holding that the recusal statute should not be construed so broadly as to become effectively presumptive or to require recusal based on unsubstantiated suggestions of personal bias or prejudice). Nothing in the magistrate's reports would cause a disinterested observer to question her impartiality.

## II.  Dismissal of State Attorneys

Bevan next argues that the district court erred in dismissing the state attorneys.  He asserts that they are not entitled to absolute immunity when they performed functions outside their roles as advocates for the state.[3]  Bevan points out that he submitted a video interview of John McSweeney, in which McSweeney stated that State Attorney D'Allasandro maintained a file on Bevan that he shared with the neighbor defendants.  Additionally, Bevan argues that the State Attorney's Office is in reality a county office, and its members are not entitled to immunity under the Eleventh Amendment.[4]

A prosecutor is entitled to absolute immunity for all actions he takes while performing his function as an advocate for the government.  Buckley v. Fitzsimmons, 509 U.S. 259, 273, 113 S.Ct. 2606, 2615-16, 125 L.Ed.2d 209

---

[3]  Bevan points to activities of the state attorneys that are outside their prosecutorial function, such as attending after-hours meetings with his neighbors and giving statements at a press conference.  Bevan argues that immunity does not protect the state attorneys in their performance of those extra-prosecutorial activities.  The state attorneys' actions would fall either within the claim of malicious prosecution or one of Bevan's other claims.  The district court dismissed all claims against the state attorneys, except the malicious prosecution claim, based on Bevan's failure to state a claim.  Even though the district court addressed immunity issues with the claims of conspiracy, false arrest, slander, and libel, Bevan does not argue the district court erred in dismissing those claims for his failure to state a claim.  Therefore, we need not address the dismissal of those claims.

[4]  Bevan also argues that Kyle was sued as an assemblyman and is liable is his capacity as an assemblyman.  However, Bevan does not develop this argument or provide any legal support for his conclusion.  Issues not developed on appeal may be considered waived.  Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989)

(1993). The prosecutorial function includes the initiation and pursuit of criminal prosecution, Imbler v. Pachtman, 424 U.S. 409, 424, 96 S.Ct. 984, 992, 47 L.Ed.2d 128 (1976), and all appearances before the court, including examining witnesses and presenting evidence, see Burns v. Reed, 500 U.S. 478, 492, 111 S.Ct. 1934, 1942, 114 L.Ed.2d 547 (1991).

Because prosecutors are absolutely immune for actions taken while prosecuting criminal cases, the district court properly dismissed Bevan's claim of malicious prosecution. See Buckley, 509 U.S. at 273, 113 S.Ct. at 2615-16. Bevan is correct to the extent he argues that Eleventh Amendment immunity does not apply to the state attorneys in their individual capacities. See Jackson v. Georgia Dep't of Transp., 16 F.3d 1573, 1575 (11th Cir. 1994).[5] The state attorneys, however, are still afforded absolute immunity in their individual capacity for actions performed as an advocate of the government. The district court concluded that State Attorney D'Allasandro's maintaining a file on a person against whom charges were pending was within his prosecutorial function, and thus, any possible liability that would stem from that action was barred by absolute immunity. Bevan does not dispute the district court's conclusion that maintaining a file on him was within the prosecutorial function. Accordingly, the district court properly afforded

---

[5] Bevan's fourth amended complaint states that each defendant is sued in his or her individual capacity.

7

the state attorneys absolute immunity as to Bevan's malicious prosecution claim.

**III.    Granting Summary Judgment Prior to the Discovery Deadline**

Bevan next argues that the district court erred by granting summary judgment two and one-half months prior to the discovery deadline and states that no case from our Circuit upholds such action.  He also argues, based on cases from district courts in Tennessee and Ohio, that granting summary judgment prior to the end of discovery is premature.

We review a district court's decision to rule on a summary judgment motion prior to the close of discovery for abuse of discretion.  See, e.g., Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1219 (11th Cir. 2000) (reviewing claim that court prematurely granted summary judgment before appellant had been able to obtain discovery and noting that we review the court's "management of discovery in this context for abuse of discretion").  The appellant, however, must be able to show substantial harm from the court's decision.  See id. ("a party must be able to show substantial harm to its case from the denial of its request for additional discovery").  Moreover, the party opposing summary judgment is responsible for informing the court of any outstanding discovery.  Cowan v. J.C. Penney Co., 790 F.2d 1529, 1530 (11th Cir. 1986) (per curiam).

Indeed, Fed.R.Civ.P. 56(f) was designed and crafted with precisely that

purpose in mind.  Rule 56(f) states:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed.R.Civ.P. 56(f).  "The party seeking to use [R]ule 56(f) may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts, but rather he must specifically demonstrate how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact."  Reflectone, Inc. v. Farrand Optical Co., 862 F.2d 841, 843-44 (11th Cir. 1989) (internal citation and quotation marks omitted).  "The presence of Rule 56(f) shows that appellant's argument that it is per se improper to grant summary judgment without providing the opponent an opportunity to conduct discovery is without merit."  Id. at 844.  Pursuant to Rule 56(f), a party opposing summary judgment must provide the court with an affidavit justifying the need for additional discovery.  Fed.R.Civ.P. 56(f).

The district court did not err in granting partial summary judgment before discovery ended.  In his brief, Bevan did not specify which motions for summary judgment were granted prior to the end of discovery.  However, the docket reflects that the Wolfsons, Dufrats, Nieminskis, and Mrs. McSweeney were the only

9

parties granted partial summary judgment prior to the end of discovery. Discovery was scheduled to end October 6, 2005. In his opposition to their motions for summary judgment, Bevan stated that he was prevented from conducting discovery until the entry of the Case Management and Scheduling Order, and he would be "conducting discovery shortly." Bevan filed these oppositions in January and February 2005. By the July 22, 2005, order, he had not conducted discovery and moreover he had not indicated, as the court noted, that he had any outstanding discovery. Even a pro se litigant must follow procedures. Loren v. Sasser, 309 F.3d 1296, 1304 (11th Cir. 2002). Even though Bevan cites cases to support his argument that summary judgment granted before the discovery deadline is improper, cases from other circuits are not binding on this Court and are merely persuasive. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir. 1981). Since Bevan only made vague assertions as to his future discovery efforts, without indicating what showing he would make, the district court did not abuse its discretion in granting summary judgment prior to the end of discovery. See Reflectone, 862 F.2d at 843-44; see also Leigh, 212 F.3d at 1279 (holding that the opposing party must show substantial harm).

## IV. Denial of Bevan's Thirty Motions to Compel

Bevan next argues that the district court abused its discretion when it denied

10

his numerous motions to compel responses to interrogatories, served the day before the discovery deadline. He argues that his discovery requests were properly served within the discovery time period and were reasonably calculated to lead to the discovery of admissible evidence, and that therefore denying his motions to compel was an abuse of discretion.

Under Federal Rule of Civil Procedure 72(a), a party has ten days to file, for the district court's consideration, objections to a magistrate judge's ruling on nondispositive motions. Maynard v. Bd. of Regents of the Div. of Univ. of Fla. Dep't of Educ., 342 F.3d 1281, 1286 (11th Cir. 2003); Fed.R.Civ.P. 72(a). Failure timely to object to the district court constitutes a waiver of the right to appeal the order. Maynard, 342 F.3d at 1286.

All parties appear to be under the impression that the district court denied the motions to compel that Bevan lists in his brief, however, the magistrate judge actually denied the motions to compel that Bevan listed on appeal. Bevan failed to object to the district court regarding the magistrate judge's orders. Therefore, he waived his right to appeal the orders denying his motions to compel. See Maynard, 342 F.3d at 1286; see also Farrow v. West, 320 F.3d 1235, 1248 n.21.

**V.      Dismissal of the Estate of John McSweeney**

Bevan next argues that the district court erred by ruling at one point that he

11

had timely served the estate of John McSweeney, and then later ruling that Bevan had failed to timely serve the estate based on Florida statutes.

While it is unclear what standard of review applies to the district court's revision of its previous analysis, the district court conducted its analysis while deciding upon a motion to dismiss. We review de novo a district court order granting a motion to dismiss. Wagner v. First Horizon Pharm. Corp., 464 F.3d 1273, 1277 (11th Cir. 2006).

Bevan's argument that the district court erred in changing its ruling fails. The estate of John McSweeney filed a motion to dismiss, which was denied prior to Bevan filing his fourth amended complaint. In its ruling denying the estate's motion to dismiss the first complaint, the district court noted the two-year Florida limitations period to file a claim against an estate. When the district court ultimately dismissed the estate, however, it did so upon a motion to dismiss Bevan's fourth amended complaint. In that motion to dismiss, the court was given additional information contained in Mrs. McSweeney's affidavit, in which she attested that she had published notice of John McSweeney's death in an obituary that ran in the winter of 2002, immediately after his death, and Bevan knew about his death. Bevan did not dispute this nor did he point to or submit any evidence contrary to Mrs. McSweeney's affidavit. The district court concluded that based

12

upon Mrs. McSweeney's published notice, the two-year statute of limitations did not apply, and instead, Bevan should have filed his claim within three months of publication of the notice of John McSweeney's death. In his brief, Bevan cites no authority that would have prevented the district court from considering the estate's motion to dismiss Bevan's fourth amended complaint, which produced a different result from an earlier motion to dismiss an earlier complaint. The court had a basis for revising its ruling, and moreover, Bevan has not raised a factual or legal challenge to the underlying findings of that basis.

## VI. Granting Summary Judgment to the Law Enforcement Officers and Neighbors on Bevan's Claims Under 42 U.S.C. § 1983

### A. Violations of 42 U.S.C. § 1983

Bevan next argues that the district court erred by not "controverting" the affidavits of law enforcement submitted with their motion for summary judgment and accepting them as true, especially since they were exceedingly similar, apparently typed by the affiant's attorney, and unsigned. Bevan then essentially argues that the evidence he submitted, along with his acquittal, amounts to sufficient evidence for him to survive summary judgment.[6]

---

[6] While Bevan does not specify the affidavits or claims to which he is referring, the affidavits of the law enforcement officers are the only ones that are almost identical and appear to be drafted by an attorney. The district court dismissed only Count I based upon the law enforcement officers' affidavits; therefore this memo will only address the court's use of the law enforcement officers' affidavits to dismiss Count I. Bevan's failure to specifically argue regarding deficiencies with other affidavits means that he has abandoned those arguments.

This Court reviews <u>de novo</u> a district court's grant of summary judgment. <u>Mercado v. City of Orlando</u>, 407 F.3d 1152, 1156 (11th Cir. 2005). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." <u>Id.</u> (quoting Fed.R.Civ.P. 56(c)). When making this determination, we view all facts in the light most favorable to Bevan, the non-moving party. <u>See id.</u> "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." <u>Jeffery v. Sarasota White Sox, Inc.</u>, 64 F.3d 590, 593-94 (11th Cir. 1995) (internal quotation marks and citations omitted).

Summary judgment was properly granted to the law enforcement officers for alleged violations under 42 U.S.C. § 1983. Each law enforcement officer filed signed affidavits in which they stated they were not involved in Bevan's arrest and did not advise anyone on how to prosecute Bevan. Even though Bevan submitted a voluminous amount of evidence, he did not submit anything that tied any officer,

<u>Horsley</u>, 304 F.3d at 1131 n.1.

14

other than Officer Foell, to his arrest and prosecution. It was Bevan's burden to point to specific evidence that would controvert the law officers' affidavits and create a genuine issue of material fact. See Jeffery, 64 F.3d at 593-94. Because Bevan failed to meet his burden, the district court properly granted summary judgment.

Bevan next argues on appeal that the law enforcement officers are not entitled to qualified immunity because a reasonable official would not have arrested him, and the district court erred in granting summary judgment to the law enforcement officers based on their qualified immunity.[7] Specifically, Bevan faults Officer Foell for not recognizing that it was impossible for Bevan to throw a punch at his neighbor over an eight-foot high fence, not reviewing 911 tapes that recorded death threats against Bevan, and relying on statements of two of Bevan's neighbors that Bevan describes as "fraudulent."

"Qualified immunity protects government officials acting within their discretionary functions from liability for civil damages as long as their conduct does not violate clearly established statutory or constitutional rights that a reasonable person would have known." Skrtich v. Thornton, 280 F.3d 1295, 1302

---

[7] Only Officer Foell was granted summary judgment based on qualified immunity, therefore the issue of qualified immunity will only be addressed as to Officer Foell. Bevan refers to officers Bond, Bonsall, and Hamilton in his brief but they are not parties to this case.

(11th Cir. 2002). The qualified immunity doctrine is intended to balance society's interest in providing a remedy for injured victims and discouraging unlawful conduct against the interest in enabling public officials to act independently and without fear of consequences. Harlow v. Fitzgerald, 457 U.S. 800, 819, 102 S.Ct. 2727, 2738-39 73 L.Ed.2d 396 (1982). "Once a witness tells a story which, if believed, would support criminal charges, society's interest swings in favor of the investigating officer presenting that witness to the proper authorities without fear of personal liability, absent subornation of perjury." Williams v. City of Albany, 936 F.2d 1256, 1260 (11th Cir. 1991).

The district court properly found Officer Foell was protected from suit by qualified immunity. The district court pointed out that Bevan never specified what false information Officer Foell submitted in his report. Additionally, even though Bevan's height theory may have provided a basis for his acquittal, there was no evidence Bevan made Officer Foell aware of the height theory. The district court also correctly pointed out that, even if Bevan had told Officer Foell about his height theory – that it was impossible for him to punch his neighbor because they were separated by an eight-foot high fence – it would not have automatically rendered the neighbors' identical statements unbelievable. Based on the information available to Officer Foell, a reasonable person would not have known

16

that arresting Bevan would have been a clear violation of his constitutional rights. Therefore Officer Foell was entitled to qualified immunity for his investigation. See Skrtich, 280 F.3d at 1302. Accordingly, the district court properly granted Officer Foell summary judgment based on qualified immunity.

### B. Conspiracy to Violate 42 U.S.C. § 1983

Bevan next argues that the district court erred in granting summary judgment on his conspiracy claim because the private-party defendants attended secret meetings where members of the State Attorney's Office were present, as well as people from the Sheriff's Office, and attendees of these meetings conspired to arrest and prosecute Bevan for a crime he did not commit. Bevan argues that the law enforcement officers are not entitled to qualified immunity because of the "fraudulent" investigation conducted by Officer Foell that led to Bevan's arrest, which was in clear violation of his constitutional rights. He argues that the investigation of Bevan and his arrest was in furtherance of the conspiracy to violate his constitutional rights.

"To establish a prima facie case of § 1983 conspiracy, a plaintiff must show, among other things, that the defendants reached an understanding to violate his rights." Rowe, 279 F.3d at 1283 (quotations and citation omitted). "For a conspiracy claim to survive a motion for summary judgment, a mere scintilla of

17

evidence will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Id. at 1284 (internal quotation marks and citation omitted).

Bevan did submit evidence that some of the defendants attended meetings and even discussed him and his family. However, Bevan points to no evidence that would support the existence of an agreement to violate his constitutional rights, which is an essential element needed to prove Bevan's conspiracy claim. Some neighbors submitted affidavits stating that they had never attended a meeting, and others admitted to attending a meeting but stated that there was no conspiracy and no discussion occurred as to how to violate Bevan's rights. Mr. Nieminski attested that the meetings were held to discuss protection and neighborhood watch programs in response to Andrew Bevan's commission of violent felonies. The Dufrats attested that two neighborhood watch meetings were held in response to Andrew Bevan's escalating violent criminal behavior. The Wolfsons attested that the neighborhood meetings were held to discuss personal safety and protection, not Bevan. Mrs. McSweeney attested that the neighborhood meetings were held for the purpose of learning how to properly report crimes to the police, and she attested that no one discussed how to incarcerate Bevan or deprive him of his rights. Bevan submitted no evidence to contradict the affidavits. The mere fact

that he was acquitted of a crime does not presuppose an agreement to violate Bevan's constitutional rights. See Rowe, 279 F.3d at 1283. Accordingly, the district court properly granted summary judgment as to Bevan's conspiracy claim.

C.     Respondeat Supreior under 42 U.S.C. § 1983

Bevan finally argues that the Lee County Sheriff is vicariously liable for his deputies. "A defendant cannot be held liable under section 1983 on a respondeat superior or vicarious liability basis." Harvey v. Harvey, 949 F.2d 1127, 1129-30 (11th Cir. 1992).

The district court noted that Bevan did not allege Shoap personally participated in any of the alleged constitutional violations, and he submitted no applicable evidence. Accordingly, the district court did not err in granting Shoap summary judgment on Count III.

Upon review of the record and consideration of the briefs filed by the parties, we discern no reversible error.

**AFFIRMED.**[8]

---

[8] Bevan's request for oral argument is denied.