**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Gary A. GREENOUGH,**
**Defendant-Appellant.**

No. 85–7020.

United States Court of Appeals,
Eleventh Circuit.

Feb. 27, 1986.
Rehearing and Rehearing En Banc
Denied April 7, 1986.

See also, D.C., 609 F.Supp. 1090.

E.E. Ball, Owen, Ball & Simon, Richard M. Kemmer, Jr., Bay Minette, Ala., for defendant-appellant.

J.B. Sessions, III, U.S. Atty., Ginny S. Granade, Asst. U.S. Atty., Mobile, Ala., for plaintiff-appellee.

Before GODBOLD, Chief Judge, AN-DERSON, Circuit Judge, and ATKINS *, Senior District Judge.

PER CURIAM:

Defendant was a member of the Board of Commissioners, the governing body of the City of Mobile, Alabama. Among his responsibilities were the finance department of the city and the city auditorium. He was charged and convicted in 14 counts, alleging violation of 18 U.S.C. §§ 371, 1341, 1343 and 1951. The charges related to various schemes to skim or divert money from operation of the city auditorium to defendant and his friends.

Defendant filed a motion under the provision of 28 U.S.C. § 455(a) requiring that a judge shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned. The motion alleged the following. A state criminal case having its genesis in the same facts was pending against Greenough and was set for trial ahead of the federal case. The state case was postponed on motion of the prosecution and over defendant's objection. The

* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

state judge told counsel for defendant that he received direct communications from the federal district judge and the United States Attorney and that "both parties had been more or less noncommittal as to whether or not the state case would be continued." The motion went on to state that thereafter a story appeared in a local newspaper saying:

> Hodnette [the state judge], as everyone knows, changed his mind and put the trial off. But it took a little persuasion from a very persuasive and very angry United States District Judge Brevard Hand [the federal district judge to whom the case was assigned].

Defendant stated he had attempted to find out from the reporter who wrote the newspaper piece whether she had first-hand information, and she declined to divulge this. Defendant asked for a hearing to determine the sources of the reporter's information, and whether the district judge was angry, and if he was the source of his anger.

The district judge ordered defendant to file affidavits to support the truth of his allegations. Defendant responded with a group of nearly 30 duplicate boilerplate affidavits, each saying:

> After reading the article, I seriously doubt that Judge Brevard Hand can be impartial in his treatment of Gary Greenough, if he were the judge trying Mr. Greenough's case. If what Ms. Taylor [the reporter] says is true, I definitely feel Judge Hand would be biased against Mr. Greenough and would not afford him a partial trial.

■ The court filed a lengthy order denying the motion. As the district court pointed out, the standard for determining whether a judge should disqualify himself under § 455 is an objective one, whether a reasonable person knowing all the facts would conclude that the judge's impartiality might reasonably be questioned. *Hepperle v. Johnston,* 590 F.2d 609, 614 (5th Cir.1979). Section 455 does not require the judge to accept all allegations by the moving party as true. If a party could force

recusal of a judge by factual allegations, the result would be a virtual "open season" for recusal. *Phillips v. Joint Legislative Com.* 637 F.2d 1014 (5th Cir.1981) (Unit A).

There are twin, and sometimes competing, policies that bear on the application of the § 455(a) standard. The first is that courts must not only be, but must seem to be, free of bias or prejudice. Thus the situation is viewed through the eyes of the objective person. A second policy is that a judge, having been assigned to a case, should not recuse himself on unsupported, irrational, or highly tenuous speculation. If this occurred the price of maintaining the purity of the appearance of justice would be the power of litigants or third parties to exercise a veto over the assignment of judges.

> Because there exists this second policy, our inquiry cannot stop with the questions: have a number of people thought or said that a judge should not preside over a given case? has the judge's failure to recuse himself been a subject of unfavorable comment in the media? or, would the judge have avoided controversy and the need for appellate review had he stepped aside?

*In re United States,* 666 F.2d 690, at 694 (1st Cir.1981). Rather, a charge of partiality must be supported by facts.

> Although public confidence may be as much shaken by publicized inferences of bias that are false as by those that are true, a judge considering whether to disqualify himself must ignore rumors, innuendos, and erroneous information published as fact in the newspapers ... To find otherwise would allow an irresponsible, vindictive or self-interested press informant and/or an irresponsible, misinformed or careless reporter to control the choice of judge.

*Id.* at 695.

A district court in this circuit, quoting from *In re United States,* has reached the same conclusion in a case of great importance and high publicity.

> "[T]o the extent the doubts [concerning the judge] were created by representa-

tives of the press shown to be not grounded in fact, they cannot require disqualification." The mere fact that the issue of disqualification of Judge Clemon has drawn the attention of the media, resulting in extensive coverage is not, in itself, a good reason to reassign this case.

*U.S. v. State of Alabama,* 582 F.Supp. 1197, 1208 (N.D.Ala.1984).

▪ The district judge, after reviewing these authorities, reviewed the factual basis of the motion. He noted that the statement attributed to the state judge referred to "direct communications" but contained no indication of any anger exhibited by the federal judge, and that in the newspaper report the only reference to him was the one sentence attributing anger to him. Finally, the judge stated unequivocally in his order that there was no truth to the conclusory statements appearing in the newspaper article.

▪ Under objective standards, there can be no reasonable inference of impartiality by the fact of the district judge having a conversation with the state judge. When state and federal cases are pending against the same defendant, and when defendant is represented by the same attorney in both systems, a discussion between the state and federal trial judges concerning the dates and sequence of the respective trials in the two systems is not inappropriate or even surprising. In fact, in the states of this circuit informal dialogue between state and federal judges concerning matters of interest in both court systems arising from their respective dockets is affirmatively encouraged.

▪ In cross-examination the prosecuting attorney attempted to impeach the defendant by using a statement defendant had made to the grand jury. The defense objected, without stating a reason, and in ruling the court stated as its basis in the presence of the jury, that the grand jury testimony was an inconsistent statement. If error at all, this was no basis for mistrial. Moreover, the court gave a correcting instruction immediately.

▪ Defendant's motion for judgment of acquittal was not improperly denied. On all counts there was sufficient evidence to submit to the jury. With respect to the Hobbs Act counts (Counts 7–14), 18 U.S.C. § 1951, defendant says that there was insufficient evidence of his intent because there was not adequate proof that he intended to cause in his targets a reasonable fear of economic loss or that there was actual economic loss. Threat, fear or duress is not required for a Hobbs Act violation based upon extortion by a public officer. *U.S. v. Glass,* 709 F.2d 669 (11th Cir.1983); *U.S. v. Williams,* 621 F.2d 123 (5th Cir.1980), *cert. denied* 450 U.S. 919, 101 S.Ct. 1366, 67 L.Ed.2d 346 (1981). Also defendant says there was no quid pro quo proved for his obtaining through city employees Juzang and Gwin funds that they had skimmed from auditorium activities or demanded from auditorium performers. Or, paraphrasing, at most Greenough, Juzang and Gwin might have been conspirators but Greenough's receipt of funds, charged to have been extorted under the Hobbs Act, were not extorted because neither Juzang nor Gwin was under any threat or could receive any benefit nor was there any promise of benefit. But both Juzang and Gwin testified to their recognition of Greenough's power over them. Juzang testified that while he and Greenough had had no problems between them, "I have seen what has occurred with some other employees who have not done what the Commissioner wanted done. I never put myself in the position where I had not done what he wanted done and I did not want to test the waters.... Some of his political enemies [employed by the city] have not been treated as well as they should have been." Gwin testified that if he had not complied with Greenough's request for funds, "life could have been extremely uncomfortable for all of us .... I'm sure we probably would have been terminated." If quid pro quo is required, *see U.S. v. Dozier,* 672 F.2d 531 (5th Cir. 1982) the testimony of these two employees provided it.

In the charge conference defense counsel stated a desire to include in the proposed charge on aiding and abetting a statement that "mere acquiescence is not participation," saying that the proposed charge covered the matter in so many words but that he wanted it clearer. The proposed charge stated that mere presence at the scene of a crime and knowledge that it was being committed were not sufficient to establish aiding and abetting unless the jury found defendant was a participant and not merely a knowing spectator. When the court responded that the proposed charge covered the issue, defense counsel replied "Okay, sir," made no objection and submitted no proposed charge in writing. After the jury was instructed the defense stated it had no objections. This is the end of the matter unless there is plain error, that is, error which, examined in the context of the entire case, is so obvious that failure to notice it would seriously affect the fairness, integrity and public reputation of the proceedings. *U.S. v. Russell,* 703 F.2d 1243, 1248 (11th Cir.1983). There was no plain error.

AFFIRMED.