[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-13834
Non-Argument Calendar

_____

D.C. Docket No. 4:18-cv-00033-CDL

MARTIN CONROY,
derivatively on behalf of Aflac, incorporated,
GERARD MCCARTHY,
derivatively on behalf of Aflac, incorporated,
LOUIS VARELA,
derivatively on behalf of Aflac, incorporated,

Plaintiffs - Appellants,

versus

PAUL S. AMOS, II,
DANIEL P. AMOS,
DOUGLAS W. JOHNSON,
DR. CHARLES B. KNAPP,
BARBARA K. RIMER, et al.,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(September 5, 2019)

Before MARCUS, MARTIN, and NEWSOM, Circuit Judges.

PER CURIAM:

Plaintiffs-Appellants, shareholders and former employees of nominal defendant Aflac, incorporated, and its wholly-owned subsidiary American Life Assurance Company of Columbus (collectively referred to as "Aflac"), appeal the district court's order rejecting their Georgia derivative shareholders' suit against Defendants-Appellees, Aflac and some of its executives and board members, for alleged securities law violations, breach of fiduciary duties, and unjust enrichment. Plaintiffs also seek review of the district court judge's decision to not recuse himself from the case. After careful review, we affirm.

I.

The essential facts are these. The three named plaintiffs are former employees and current shareholders of Aflac who all allege the company engaged in improper practices. Aflac, incorporated, is an insurance company that provides policies for purchase through its wholly-owned subsidiary, American Family Life Assurance Company of Columbus. Defendant Daniel Amos is the current CEO and Chairman of the Board of Directors ("the Board") of Aflac. Defendant Paul Amos II is the son of Daniel Amos and served as the President of Aflac and on the Board. Defendants Johnson, Knapp, Rimer, Hudson, Bowers, Moskowitz, and Stith are all non-management members of the Board.

2

This shareholder-company dispute formally began in December 2016, when the Plaintiffs sent a dispute notice to Daniel Amos, Paul Amos II, and Aflac's general counsel alleging that Aflac employees were engaged in improper business practices including manipulating accounting periods and artificially inflating reports about the company's earnings and growth. Aflac's counsel informed Plaintiffs the allegations would be investigated, and later denied the allegations and demanded the employees submit their disputes to arbitration. The Plaintiffs then sent a similar notice to Aflac's outside directors. Defendant Johnson told the Plaintiffs they knew of the allegations and had hired Alston & Bird as outside counsel in relation to the notice.

Aflac published its Fiscal Year Annual Report for 2016 ("2016 Fiscal Report") after the first dispute notice was sent but before the second notice was sent to the outside directors. The 2016 Fiscal Report did not disclose the Plaintiffs' pending fraud allegations. In June 2017, Defendant Paul Amos II resigned from his positions within Aflac and sold over 200,000 of his shares in the company. Aflac repurchased some of its outstanding stock the day after Paul Amos II's sale.

Later in June, the Plaintiffs sent their first formal demand ("First Demand") to the Board. The First Demand alleged that Paul Amos II committed insider trading and breached his fiduciary duty to Aflac, and demanded that Aflac sue Paul Amos II. Aflac's board created a special litigation committee ("SLC"), composed of independent directors Bowers, Moskowitz, and Stith, to investigate and respond to

3

the claims raised in the First Demand.  The SLC determined that pursuing the claims was not in Aflac's best interests and rejected the First Demand.  After it was rejected, the Plaintiffs sent to Aflac's outside counsel a new complaint, naming Daniel Amos, Paul Amos II, and Board members Johnson, Knapp, Rimer, and Hudson as defendants ("Second Demand"). In the Second Demand, the Plaintiffs asserted breach of fiduciary duty, unjust enrichment, and securities law violations.  The SLC treated this as a new demand and undertook a new investigation.

The instant derivative action was brought in the United States District Court for the Southern District of New York while the SLC investigated the Second Demand, raising claims for violations of federal securities laws and failing to exercise fiduciary duties as directors of a corporation under Georgia law.  Soon thereafter, a news report broke that detailed the allegations made against Aflac, sending the company's stock down 7.5 percent the next day.  Aflac issued a press release denying the allegations, filed a Form 8-K with the Securities and Exchange Commission ("SEC") confirming this position, and around this time published its report responding to the First Demand.  Following the press release and 8-K, the Plaintiffs amended the complaint to add new securities fraud and false statements claims.  The SLC deemed the amended complaint a new demand on the Board ("Third Demand"), and began to investigate once again.  In February 2018, the SLC responded to the Second Demand, rejecting its claims in a detailed report.

When the Defendants moved to transfer venue in early 2018, the district court in the Southern District of New York transferred the case to the United States District Court for the Middle District of Georgia. It was assigned to Chief Judge Clay Land. After notice to the parties, the district court converted the Defendants' motion to dismiss under Ga. Code Ann. § 14-2-744, which provides the legal framework for corporate challenges to derivative actions brought on behalf of Georgia corporations, into a motion for summary judgment. Upon further briefing, the court granted the Defendants' motion on the ground that the SLC was independent and had conducted a reasonable, good faith investigation. This appeal follows.

II.

First, we find no merit to Conroy's claim that the district court judge should have recused himself from this case. We review recusal decisions for abuse of discretion. United States v. Berger, 375 F.3d 1223, 1227 (11th Cir. 2004).[1]

"Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). This standard "is an objective one, [asking] whether a

---

[1] However, when recusal is not sought in district court, we review for plain error. Id. To establish plain error, a party must show (1) an error, (2) that is plain, and (3) that affected his substantial rights. United States v. Turner, 474 F.3d 1265, 1276 (11th Cir. 2007). If these conditions are satisfied, we may exercise our discretion to recognize the error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. Id. While it's arguable that the Plaintiffs did not adequately raise the recusal issue in the district court, we need not resolve the standard of review because their claim fails under either plain error or abuse of discretion review.

reasonable person knowing all the facts would conclude that the judge's impartiality might reasonably be questioned." United States v. Greenough, 782 F.2d 1556, 1558 (11th Cir. 1986).  The Plaintiffs offer two different theories for why Chief Judge Land should have recused himself: (1) that he is part of the Fish House Gang, a social organization based in Columbus, Georgia, that Plaintiffs alternately describe as a secretive network of politicians, lawyers, and businessmen; a shadowy association; and a behind-the-scenes power group; and (2) that Chief Judge Land's familial ties mandate recusal.  Neither argument has merit.

As for the Fish House Gang, it is well established in our case law that recusal based "on unsupported, irrational, or highly tenuous speculation" is not warranted. Greenough, 782 F.2d at 1559.  The Plaintiffs' claims -- which present no concrete reason why Chief Judge Land's participation in this group would make a reasonable observer question his impartiality -- undoubtedly belong to this category.  Among other things, they offer no evidence of any meetings or interactions between Chief Judge Land and any of the defendants associated with the Gang.  There is no evidence that they were members at the same time or attended the same dinners -- there's not even a hint that the two shared a table to enjoy fried fish together at a Fish House Gang jamboree.  As Chief Judge Land explained in his order, "the undersigned has no specific recollection of [the Defendants attending a fried-fish supper] and does not believe that they are presently on the invitee list."  Moreover,

Chief Judge Land does not even recall attending a social event with any of the Defendants, let alone being friendly with them. As a result, the facts alleged to support the need for recusal are even more attenuated than those in Parrish v. Board of Commissioners of Ala. State Bar, 524 F.2d 98, 101, 104 (5th Cir. 1975) (holding that judge's "acquaint[ance] with" some of the defendants in the suit and their counsel did "not exceed what might be expected as background or associational activities with respect to the usual district judge").[2] Plaintiffs' reliance on the Fish House Gang simply provides no basis for recusal.

The allegations of disqualifying familial ties are even more attenuated. Under 28 U.S.C. § 455(b), a judge must recuse when "[h]e or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person" is involved in the case as described by the statute. However, the Plaintiffs identify no relative of Chief Judge Land who falls within the third degree of relationship. Accordingly, there was no reason for Chief Judge Land to recuse himself in this case, let alone evidence that he abused his discretion.[3]

---

[2] Decisions of the Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding precedent on the Eleventh Circuit. Bonner v. City of Pritchard, Ala., 661 F.2d 1206, 1207 (11th Cir. 1981).

[3] Plaintiffs also claim that Chief Judge Land erred as a matter of law by referring to a judge's "solemn duty to remain" on a case where there is no basis for recusal. They say that this passing reference means that the district court misapplied 28 U.S.C. § 455 because Congress and this Court have made clear that revisions to the statute "d[id] away with the old 'duty to sit' doctrine and [now] requires judges to resolve any doubts they may have in favor of disqualification." United States v. Kelly, 888 F.2d 732, 744 (11th Cir. 1989) (citation omitted). However, the

7

III.

We also find no error in the district court's decision to grant summary judgment to the Defendants based on the independent SLC's reasonable, good faith investigation.  Summary judgment is proper when the moving party establishes that, based upon the evidence presented, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Where the district court converts a motion into a motion for summary judgment, it typically must, as it did here, give the petitioner notice and an opportunity to respond with additional evidence that may raise a genuine dispute as to a material fact.  See Fed. R. Civ. P. 12(d).[4]  "Only disputes over facts that might affect the outcome of

district court's statement in its order does not show any error.  While it's true that "[a]ny doubts must be resolved in favor of recusal," the law of this Circuit is equally clear that "there is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is.  Indeed, a judge, having been assigned to a case, should not recuse himself on unsupported, irrational, or highly tenuous speculation."  In re Moody, 755 F.3d 891, 895 (11th Cir. 2014) (citations and quotations omitted).  Here, there were no doubts to resolve in favor of recusal, and we certainly have no doubts that the district court correctly followed our case law.

[4] It made sense for the district court to treat the Defendants' motion as a motion for summary judgment in this case since it already had before it the undisputed materials necessary to address the corporate governance questions relevant to Ga. Code Ann. § 14-2-744, and since, in Georgia, "[a] motion to dismiss a shareholder's derivative action pursuant to [§ 14–2–744(a)] is essentially a hybrid summary judgment motion for dismissal."  Benfield v. Wells, 749 S.E.2d 384, 385 (Ga. Ct. App. 2013).  While the Plaintiffs do not challenge the district court's conversion of the Defendants' motion, they suggest that the district court abused its discretion by failing to allow for limited discovery to address Ga. Code Ann. § 14-2-744.  See Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1306 (11th Cir. 2011) ("The district court has broad discretion . . . to compel or deny discovery; we therefore review the court's discovery rulings for an abuse of that discretion.").  Here, the district court squarely held that, based on the "existing voluminous record" which "sufficiently illuminate[d] the issues to be decided," additional discovery was not necessary, and did not abuse its discretion in reaching this decision.

8

the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (citations and quotations omitted). The court views the record and draws all factual inferences in the light most favorable to the non-movant. Carlson v. FedEx Ground Package Sys., Inc., 787 F.3d 1313, 1317 (11th Cir. 2015). We review a district court's grant of summary judgment de novo. Id.[5] We may affirm its judgment on any ground that finds support in the record. Wetherbee v. S. Co., 754 F.3d 901, 905 (11th Cir. 2014).

It is a bedrock principal of corporate law that a corporate board, like the Aflac Board here, has the prerogative to decide whether to pursue litigation on behalf of the corporation. Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 101 (1991) ("[T]he demand requirement implements the basic principle of corporate governance that the

See Reflectone, Inc. v. Farrand Optical Co., 862 F.2d 841, 843 (11th Cir. 1989) ("[A] court may grant summary judgment without parties having conducted discovery if . . . the court has, in valid exercise of discretion, denied such a motion."). Moreover, other than making general claims about possible avenues for discovery, most of which seem irrelevant to the questions at hand (like, for example, whether a witness was interviewed about sexual harassment allegations that were never a part of the instant suit), the Plaintiffs have not explained how the district court's denial of their discovery motion resulted in any harm, much less "substantial harm to [their] case." Josendis, 662 at 1307 (holding that discovery rulings will not be overturned "unless it is shown that [they] resulted in substantial harm to the appellant's case").

[5] While we review a district court's summary judgment ruling de novo, courts apply the abuse of discretion standard to dismissals under Ga. Code Ann. § 14-2-744, as well as to dismissals under Fed. R. of Civ. P. 23.1, which, like Ga. Code Ann. § 14-2-744, asks whether the plaintiff showed that the outside directors wrongfully refused his demand to sue. Benfield, 749 S.E.2d at 385–86 (involving Ga. Code Ann. § 14-2-744); Stepak v. Addison, 20 F.3d 398, 402 (11th Cir. 1994) (involving Fed. R. Civ. P. 23.1). Once again, we need not resolve which standard of review to apply, since the Plaintiffs have failed to meet either standard.

decisions of a corporation -- including the decision to initiate litigation -- should be made by the board of directors or the majority of shareholders." (quotation omitted)). The law of the state of incorporation controls the contours of a demand against a corporation, so Georgia law controls here. Id. at 96–99; see also Stepak, 20 F.3d at 402 ("Because Southern is a Delaware corporation, Delaware law governs the extent of the demand requirement and the circumstances under which Stepak may proceed derivatively notwithstanding the outside directors' refusal of his demand."); Deal v. Tugalo Gas Co., Inc., No. 2:17-CV-209-RWS, 2018 WL 4255857, at *6 (N.D. Ga. Sept. 6, 2018) (dismissing a shareholder derivative suit using Ga. Code Ann. § 14-2-744); In re The Home Depot, Inc. S'holder Derivative Litig., 223 F. Supp. 3d 1317, 1323 (N.D. Ga. 2016) ("Because the demand doctrine is a matter of substance, the Court looks to the state of incorporation to provide the rule of decision.").

Under Georgia law, a "court may dismiss a derivative proceeding if, on motion by the corporation, the court finds that [an independent group, as defined by the statute,] has made a determination in good faith after conducting a reasonable investigation upon which its conclusions are based that the maintenance of the derivative suit is not in the best interests of the corporation." Ga. Code Ann. § 14-2-744. Under § 14-2-744, "[t]he corporation shall have the burden of proving the independence and good faith of the group making the determination and the reasonableness of the investigation." Id. § 14-2-744(a). Thus, the relevant question

10

for our review is whether the Plaintiffs raised any <u>genuine</u> dispute of fact -- as opposed to irrelevant or otherwise unnecessary claims -- about whether Aflac established that the SLC was independent, that it conducted a reasonable investigation, and that it conducted the investigation in good faith. <u>Id.</u>

First, we find no error in the district court's conclusion that the SLC was independent. The district court properly began by analyzing whether the SLC and Board members Moskowitz, Bowers, and Stith were disinterested, meaning they had no personal interest in the outcome of the SLC's investigation, and whether they were independent, meaning they had no personal or outside relationships that would influence their decision. <u>See</u> <u>Benfield</u>, 749 S.E.2d at 387–88 (explaining that committee members must be both disinterested and independent under Georgia law). Moreover, the undisputed record supports the conclusion that Moskowitz, Bowers, and Stith were disinterested. As for Plaintiffs' claim that they were not disinterested because they were named in the suit and thus subject to personal liability, we disagree. Naming a director as a defendant does not make him an interested party. Ga. Code Ann. § 14-2-744(c)(2). Nor does a board member's approval of an action of the board that is later challenged make him "interested." <u>Id.</u> § 14-2-744(c)(3). It's further clear that Moskowitz, Bowers, and Stith did not have a personal interest in the outcome of the investigation because their conduct would come under the purview of Aflac's charter provision that limits the personal liability of directors.

11

Nor does the record reflect any genuine dispute of fact concerning whether the SLC was independent. The Plaintiffs attempt to point to times when Moskowitz, Bowers, and Stith served in leadership positions and on the boards of other organizations and companies alongside Defendant Daniel Amos. However, all of these connections predate 2011, and Georgia courts have rejected similar attacks on board member independence before. See Benfield, 749 S.E.2d at 388.

Similarly, we can discern no genuine dispute of fact about whether the SLC investigation was reasonable and done in good faith. The reasonableness of the investigation turns on its thoroughness and the nature of the claims in the demands. See Millsap v. Am. Family Corp., 430 S.E.2d 385, 388 (Ga. Ct. App. 1993) (finding reasonableness where the corporate committee completed a "detailed, documented investigation"). It's abundantly clear on this record that the SLC's investigation was reasonable. The SLC hired outside counsel, had access to over 600,000 documents from Aflac, interviewed 24 witnesses, and notably questioned the directors and officers who were accused of wrongdoing. The SLC submitted 3 different reports in response to allegations made by the Plaintiffs, totaling more than 200 pages across the three. Plaintiffs argue that the investigation was unreasonable because the SLC failed to interview certain witnesses, including the Plaintiffs themselves. However, the Plaintiffs point to no reason why interviewing them personally was necessary to ensure the investigation was reasonable; indeed, they do not say what information

12

these interviews would have provided that was not already covered in their complaints and other correspondence. The Plaintiffs' claim that the SLC needed to interview another employee who raised sexual harassment concerns is also meritless, since this charge against the Defendants is not raised in the complaint in this case.

As for whether the SLC thoroughly investigated each claim raised by the Plaintiffs, the district court analyzed and rejected the Plaintiffs' accusation that the SLC's outside counsel was conflicted. The Plaintiffs argue at length about the conflicts about Defendants' counsel Alston & Bird, but, importantly, an outside firm, Jones Day, investigated the derivative demands. Because the Plaintiffs' good-faith arguments were "essentially the same reasons" offered on the reasonableness issue, there is likewise no genuine dispute of material fact about whether the SLC acted in good faith based on their extensive, thorough investigation and the hiring of outside counsel. Accordingly, the district court did not err in determining, on this summary judgment record, that the Defendants properly relied on Ga. Code Ann. § 14-2-744 to dismiss the suit, and we affirm the grant of summary judgment.

**AFFIRMED.**[6]

---

[6] In addition, we GRANT Martin Conroy's unopposed motion to dismiss his individual appeal.