[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-14099
Non-Argument Calendar
_____

D.C. Docket No. 2:16-cv-00501-VEH

ROGER SHULER,
CAROL SHULER,

Plaintiffs - Appellants,

versus

LIBERTY DUKE,
CHRISTINA CROW,
JINKS CROW & DICKSON,
Law Firm,
ROB RILEY,
JAY MURRILL,
CHRIS CURRY,
individually and in his official capacity as Shelby Co. Sheriff,
WILLIAM H. PRYOR,
TED ROLLINS,
GOOGLE,
LUTHER STRANGE,
JESSICA MEDEIROS GARRISON,
WILLIAM E. SWATEK,
DAVID GESPASS,

CLAUD NEILSON, et al.,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(November 15, 2019)

Before MARCUS, ROSENBAUM, and EDMONDSON, Circuit Judges.

PER CURIAM:

Plaintiffs Roger and Carol Shuler (proceeding <u>pro se)</u> appeal the district court's dismissal with prejudice of their civil action, filed pursuant to 42 U.S.C. § 1983 and Alabama law.  Plaintiffs also appeal the denial of their motions to disqualify district court Judges Hopkins and Smith.  No reversible error has been shown; we affirm.

This appeal is broadly tied to articles Roger published on his blog about "unseemly matters connected to key political and legal figures in Alabama."  Briefly stated, Roger alleges that defendants participated in a conspiracy to retaliate against him for engaging in conduct protected by the First Amendment.

2

Plaintiffs' complaint identifies two defamation lawsuits filed against Roger as a result of Roger's blog posts, including a lawsuit filed by Defendants Rob Riley and Liberty Duke (the "Riley/Duke litigation"). Judge Claud Neilson -- "serving as judge by designation of the Alabama Supreme Court" -- presided over the Riley/Duke litigation and issued a contempt order against Roger for failing to appear.

In connection with the contempt order in the Riley/Duke litigation, Deputy Sheriffs Chris Blevins and Jason Valenti arrested Roger at his home on 23 October 2013. Plaintiffs allege that Deputy Sheriff Blevins entered Plaintiffs' garage without a warrant, shoved Roger to the concrete floor, sprayed Roger with pepper spray, and dragged Roger from his garage to the driveway, where Deputy Sheriff Valenti threatened to break Roger's arms. Roger was transported to the Shelby County Jail and was charged with resisting arrest. Following a trial, Roger was found guilty of resisting arrest and was given a suspended sentence. Roger was released from custody on 26 March 2014.

As a result of Roger's arrest and incarceration, Roger's photograph was published on several websites, which Plaintiffs say implied falsely that Roger was a criminal. Plaintiffs also allege that -- in response to being featured in Roger's

3

blog posts -- Defendant Ted Rollins made purportedly defamatory statements about Roger on several websites, websites advertised by Google.

Plaintiffs filed their initial pro se complaint on 26 March 2016, in which they named 22 defendants. In September 2017, Plaintiffs amended their complaint, naming eight additional defendants. In their amended complaint, Plaintiffs asserted against defendants federal claims under section 1983 for violation of the First, Fourth, and Fourteenth Amendments. Plaintiffs also asserted claims under Alabama law for defamation, abuse of process, assault and battery, trespassing, invasion of privacy, false arrest and false imprisonment, and for intentional infliction of emotional distress.

In sixteen separately-filed motions, defendants moved to dismiss Plaintiffs' complaint. The district court dismissed with prejudice Plaintiffs' amended complaint for failure to state a claim.[1]

---

[1] On appeal, Plaintiffs contend the district court should have granted them leave to amend before dismissing the amended complaint with prejudice. Plaintiffs filed no motion to amend in the district court. Nor do Plaintiffs describe what proposed amendments would cure the deficiencies identified by the district court. Because Plaintiffs had already amended their complaint once and because nothing indicated that a more carefully drafted complaint would have stated a claim, the district court abused no discretion in dismissing Plaintiffs' complaint without first sua sponte granting Plaintiffs leave to amend. See Bank v. Pitt, 928 F.2d 1108, 1112 (11th Cir. 1991), overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp., 314 F.3d 541, 542 (11th Cir. 2002) (en banc) (district courts must provide pro se plaintiffs "at least one chance to amend the complaint," but only if "a more carefully drafted complaint might state a claim").

I.

We review de novo the district court's grant of a motion to dismiss a complaint for failure to state a claim. Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). In doing so, we accept as true the factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiffs. Id. In addition, we construe liberally pro se pleadings. Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998).

A. Judicial Immunity

The district court committed no error in dismissing Plaintiffs' claims against Judge Neilson as barred by absolute judicial immunity. A judge is entitled to absolute judicial immunity from damages for acts taken while acting in his judicial capacity. Sibley v. Lando, 437 F.3d 1067, 1070 (11th Cir. 2005). A judge is entitled to immunity even when his conduct "was in error, was done maliciously, or was in excess of his authority." Stump v. Sparkman, 435 U.S. 349, 356 (1978). A judge acting within his judicial capacity is "subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" Id. at 356-57.

5

Here, Plaintiffs' claims against Judge Neilson stem from judicial rulings Judge Neilson made while presiding over the Riley/Duke litigation, including Judge Neilson's issuance of the contempt order.  That these decisions were made in the direct exercise of Judge Neilson's judicial function is clear.  See id. at 362 (in determining whether an act by a judge is "judicial" in nature, we consider "whether it is a function normally performed by a judge" and whether the parties "dealt with the judge in his judicial capacity").  Although Plaintiffs contend that Judge Neilson's rulings were erroneous, Plaintiffs allege no facts -- accepted as true and construed in Plaintiffs' favor -- demonstrating that Judge Neilson acted in the "clear absence of all jurisdiction."  Judge Neilson is thus entitled to absolute judicial immunity from Plaintiffs' federal and state claims.

B.  Statute of Limitations

1.  *Federal § 1983 Claims (Counts 1-6)*[2]

---

[2] Even construed liberally, Plaintiffs' initial appellate brief raises no challenge to the district court's dismissal of Plaintiffs' section 1983 claim for civil conspiracy (Count 13).  That claim is thus not before us on appeal.  See Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008) ("While we read briefs filed by pro se litigants liberally, issues not briefed on appeal by a pro se litigant are deemed abandoned." (citation omitted)).

Plaintiffs' section 1983 claims are subject to Alabama's two-year statute of limitations for personal injury actions. See Ala. Code § 6-2-38(*l*); Wallace v. Kato, 549 U.S. 384, 394 (2007) (in section 1983 actions, federal courts refer typically to state law to determine the applicable statute of limitations and tolling rules). A cause of action under section 1983 accrues -- and the statute of limitations begins to run -- when a plaintiff knows or has reason to know (1) of his injury and (2) who has inflicted it. Chappell v. Rich, 340 F.3d 1279, 1283 (11th Cir. 2003).

Plaintiffs' federal constitutional claims (Counts 1-6) all arise from events that occurred during Roger's arrest on 23 October 2013. Plaintiffs' initial complaint -- filed on 26 March 2016 -- was filed more than two years after Plaintiffs' claims accrued and the statute of limitations began to run. The district court thus dismissed properly Plaintiffs' federal claims as time-barred.

On appeal, Plaintiffs contend that their cause of action for false arrest and for false imprisonment (Counts 4 and 5) first accrued when Roger was released from custody on 26 March 2014. This argument is foreclosed by the Supreme Court's decision in Wallace v. Kato. The Supreme Court stressed that "false imprisonment consists of detention without legal process." Wallace, 549 U.S. at 390 (emphasis added). Thus, claims for false imprisonment (which encompass claims for false arrest) accrue on the date legal process is initiated against a

7

plaintiff. Id. Once a person is held pursuant to legal process, the continuation of a purportedly "unlawful detention forms part of the damages for the 'entirely distinct' tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process." Id. (emphasis in original).

Here, state court records[3] demonstrate that a warrant for Roger's arrest was issued by a magistrate judge, that Roger was charged with resisting arrest, and that Roger was later adjudged guilty of resisting arrest. Because Roger was not detained without legal process, his false arrest and false imprisonment claims accrued on the day of his arrest: the day Plaintiffs knew of their alleged injury and who had caused it. See id.; Chappell, 340 F.3d at 1283.

We also reject Plaintiffs' argument about equitable tolling. Under Alabama law, a plaintiff seeking equitable tolling bears the burden of showing (1) that he has pursued diligently his rights, and (2) that some extraordinary circumstance prevented him from filing the action. Weaver v. Firestone, 155 So. 3d 952, 957 (Ala. 2013) (citing Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). Whether equitable tolling applies is a fact-specific inquiry. Id. at 958. We have said that

---

[3] In considering a Rule 12(b)(6) motion to dismiss, appellate courts may take judicial notice of publicly-filed documents, including state court records. Lozman v. City of Riviera Beach, 713 F.3d 1066, 1075 n.9 (11th Cir. 2013).

equitable tolling is an "extraordinary remedy" that should be extended "only sparingly."  Arce v. Garcia, 434 F.3d 1254, 1261 (11th Cir. 2006).

Plaintiffs contend that equitable tolling is warranted in this case based on (1) Roger's five-month imprisonment and (2) Carol's broken arm, which required surgery and six months of physical therapy.  Contrary to Plaintiffs' assertion, imprisonment -- by itself -- is no "extraordinary circumstance" warranting automatic equitable tolling: an imprisoned litigant must still show he pursued diligently his rights.  Cf. Pace, 544 U.S. at 418.  Nor is a broken arm the kind of "extraordinary circumstance" justifying equitable tolling.  Plaintiffs have alleged no facts demonstrating that they exercised reasonable diligence in pursuing their claims or how they were prevented from doing so.  On this record, Plaintiffs cannot show that equitable tolling is justified in this case.

### 2.  State Law Claims (Counts 8, 11, 12 & Second 12)

The district court also dismissed as time-barred Plaintiffs' claims under Alabama law for abuse-of-process, invasion of privacy, false arrest and false imprisonment, and for intentional infliction of emotional distress.  That these state-

9

law claims are subject to a two-year statute of limitations -- under Ala. Code § 6-2-38(*l*) -- is undisputed.

Plaintiffs' claims for invasion of privacy, false arrest and false imprisonment, and for intentional infliction of emotional distress are tied clearly to events that occurred on the day of Roger's arrest on 23 October 2013.  About Plaintiffs' abuse-of-process claim, Plaintiffs identify two legal processes that form the basis of their claim: (1) the motion for a preliminary injunction and contempt order (filed in the Riley/Duke litigation) which led to Roger's arrest; and (2) the charges filed against Roger for resisting arrest.  Both complained-of processes occurred on or before Roger's arrest on 23 October 2013.

Because more than two years elapsed between the events giving rise to Plaintiffs' claims and the filing of Plaintiffs' initial complaint -- and because Plaintiffs have alleged no circumstances warranting equitable tolling of the two-year limitations period -- the district court dismissed properly Counts 8, 11, 12, and Second 12 as time-barred.

C. <u>State Immunity</u>

We next address Plaintiffs' claims against Sheriff Chris Curry and Deputy

Sheriffs Blevins and Valenti ("Defendant Officers") for assault and battery and for

trespass (Counts 9 & 10). The district court dismissed these claims as barred by

sovereign immunity.[4]

Pursuant to Article I, § 14, Ala. Const. of 1901, the State of Alabama has

absolute immunity from lawsuits. Ex parte Donaldson, 80 So. 3d 895, 897 (Ala.

2011). In applying this constitutional "State immunity" doctrine, Alabama courts

have said that "an action against a sheriff -- or a deputy sheriff -- for damages

arising out of the performance of his duties is 'essentially a suit against the state.'"

Ex parte Davis, 930 So. 2d 497, 501 (Ala. 2005). Given a sheriff's status as a

constitutional officer -- and because deputy sheriffs act on behalf of a sheriff -- "a

claim for monetary damages made against a deputy sheriff in his or her individual

capacity is barred by the doctrine of State immunity whenever the acts that form

the basis of the alleged liability were being performed within the line and scope of

the deputy sheriff's employment." Ex parte Donaldson, 80 So. 3d at 899.

---

[4] Because these claims are subject to a six-year limitations period under Ala. Code § 6-2-34, the claims were not dismissed as time-barred.

11

Plaintiffs' claims for assault and battery and for trespass stem from Defendant Officers' alleged conduct while arresting or attempting to arrest Roger at his home. Performing arrests falls within the statutory duties of a sheriff and his deputies. See Ala. Code § 36-22-3(a)(4), (b); Ex parte Davis, 930 So. 2d at 501. Because Plaintiffs seek money damages for acts performed by Defendant Officers in the course and scope of their official duties, Plaintiffs' claims against Defendant Officers are barred by Alabama's State immunity doctrine. See Ex parte Fielding, 86 So. 3d 354, 358 (2011) (a deputy sheriff sued in his official and individual capacity was immune under § 14 for tort liability because -- when he entered his neighbors' property and shot his neighbors' dog -- he was acting within the scope of his duties to protect citizens and to preserve the peace); Ex parte Davis, 930 So. 2d at 501-02 (concluding that a deputy sheriff was entitled to State immunity from individual-capacity claims for money damages for trespass and for assault and battery arising out of a search and arrest on plaintiff's property: acts that were performed within the scope of the deputy sheriff's official duties).

On appeal, Plaintiffs contend that Defendant Officers are unentitled to immunity because Defendant Officers acted with malice and in bad faith. Plaintiffs rely chiefly on Ex parte Cranman, 792 So. 2d 392, 405 (Ala. 2000), in which the Alabama Supreme Court recognized exceptions to Alabama's state-

12

agent immunity doctrine if a state agent acted "willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law." The doctrine of State immunity under § 14 -- the doctrine at issue in this case -- is separate and distinct from the doctrine of state-agent immunity addressed in Ex parte Cranman. Alabama's State immunity doctrine applies to constitutional officers (including sheriffs and deputy sheriffs) while Alabama's state-agent immunity doctrine applies "to those state agents or employees whose positions exist by virtue of legislative pronouncement." Ex parte Donaldson, 80 So. 3d at 900. Thus, the exceptions to state-agent immunity recognized in Ex parte Cranman have no bearing on the immunity afforded sheriffs and deputy sheriffs under § 14. Id.

### D. Defamation (Count 7)

The district court concluded that Plaintiffs failed to allege sufficient facts to state a plausible claim for defamation. The district court also concluded -- as an "additional and independent" ground for dismissal -- that Plaintiffs' defamation claim against Google was barred by section 230 of the Communications Decency Act, 47 U.S.C. § 230(c)(1) ("CDA").

13

On appeal, Plaintiffs raise no substantive argument challenging the district court's chief reason for dismissing Plaintiff's defamation claim against all defendants. Plaintiffs' appellate brief focuses, instead, only on the district court's independent alternative ground for dismissing Plaintiffs' defamation claim against Google as barred by the CDA. We thus affirm the district court's dismissal of Plaintiffs' defamation claim for failure to state a claim for relief. For background, see Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678 (11th Cir. 2014) ("an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority").

## II.

Plaintiffs next contend that the district court erred in denying Plaintiffs' motions to recuse district court Judges Hopkins and Smith: motions that Plaintiffs say were filed pursuant only to 28 U.S.C. § 144. Plaintiffs moved to recuse Judge Hopkins based on (1) campaign contributions that Judge Hopkins or her husband made to political candidates whom Roger criticized on his blog;[5] and (2) judicial

---

[5] In support of their motion for recusal, Plaintiffs alleged the following campaign contributions made by now-Judge Virginia Hopkins and by her husband, Christopher Hopkins:

- 2000: Virginia contributed $250 to President Bush

14

rulings Judge Hopkins made in this case.  Plaintiffs' motion was referred to Judge

Smith.  In a 12-page order, Judge Smith concluded that no personal bias or

prejudice was shown and denied the motion.

Plaintiffs then moved to have Judge Smith disqualified -- and to vacate the

order denying Plaintiffs' motion to recuse Judge Hopkins -- based on evidence that

Judge Smith is related to Defendant Riley.  Chief Judge Bowdre denied the motion,

explaining that (1) the seven-degrees of relationship between Judge Smith and

Defendant Riley mandated no recusal and (2) nothing evidenced that Judge Smith

harbored a personal bias or prejudice against Plaintiffs or personal knowledge of

the controversy.

We review for abuse of discretion the district court's rulings on a

defendant's motions for recusal.  United States v. Bailey, 175 F.3d 966, 968 (11th

Cir. 1999).  We will affirm a judge's refusal to recuse unless "the impropriety is

---

- 21 May 2003: Virginia and Christopher each contributed $1000 to Senator Richard Shelby
- 31 October 2003: Christopher contributed $2000 to the Bush-Cheney campaign
- 2 March 2004: Christopher contributed $1000 to Sen. Jeff Sessions

Plaintiffs also alleged -- with no further factual allegations about the dates, amounts, or recipients -- that "[o]verall, [Christopher] made nearly $9,000 in federal contributions between 2000-2004, with all but $500 going to Republicans."

Plaintiffs have called to our attention no campaign contribution -- from Judge Hopkins or from Christopher -- that was made after Judge Hopkins took the judicial oath in 2004. Moreover, the last contribution identified by Plaintiffs was made twelve years before Plaintiffs filed this civil action in March 2016: a significant passage of time.  We also note that none of the identified recipients of campaign contributions are parties to this civil action.

clear and one which would be recognized by all objective, reasonable persons." Id. Recusal is warranted under section 144 only if the moving party "allege[s] facts that would convince a reasonable person that bias actually exists." Christo v. Padgett, 223 F.3d 1324, 1333 (11th Cir. 2000).

The district court abused no discretion in denying Plaintiffs' motions to recuse Judge Hopkins. About the complained-of campaign contributions (made before Judge Hopkins became a federal judge and well over a decade before Plaintiffs filed this civil action), Plaintiffs allege no facts tending to show that Roger's criticism of the recipients of those contributions -- whom Plaintiffs say "supported, championed, and enhanced Judge Hopkins'[s] legal career" -- caused Judge Hopkins to harbor actual personal bias against Plaintiffs. In addition, nothing evidences that the adverse rulings made by Judge Hopkins during the district court proceedings were motivated by actual bias against Plaintiffs.

We also reject Plaintiffs' contention that Judge Smith should have been disqualified on grounds that he is related to Defendant Riley. Although not cited by Plaintiffs, the district court relied reasonably on 28 U.S.C. § 455, which provides that a judge "shall" disqualify himself if the judge is related -- "within the third degree of relationship" -- to a party to the proceeding. See 28 U.S.C. § 455(b)(5). Because Judge Smith confirmed facts in a sworn affidavit that he was

16

separated from Defendant Riley by seven degrees of relationship, no recusal was mandated under section 455. Other than Judge Smith's familial ties to Defendant Riley, Plaintiffs identify no other ground for disqualification.

AFFIRMED.[6]

---

[6] We note that United States Circuit Judge for the Eleventh Circuit William H. Pryor is one of the thirty named defendants in this case. In the district court, Plaintiffs seemed to assert that Judge Pryor's status as a defendant required the recusal from these proceedings of every district judge of the Northern District of Alabama and every circuit judge of the Eleventh Circuit. But Plaintiffs have filed no motion to recuse in this Court. Nevertheless, we consider, on our own accord, the issue of recusal. See United States v. Kelly, 888 F.2d 732, 744 (11th Cir. 1989).

A federal judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). "The standard for recusal under section 455(a) is 'whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality.'" Kelly, 888 F.2d at 744-45.

"There are twin, and sometimes competing, policies that bear on the application of the section 455(a) standard." United States v. Greenough, 782 F.2d 1556, 1558 (11th Cir. 1986). On the one hand, "courts must not only be, but must seem to be, free of bias or prejudice." Id. On the other hand, "a judge, having been assigned to a case, should not recuse himself on unsupported, irrational, or highly tenuous speculation." Id. To do so would grant to litigants or third parties the power "to exercise a veto over the assignment of judges." Id. In the light of these competing policies, we have recognized that "there is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is." In re Moody, 755 F.3d 891, 895 (11th Cir. 2014).

Given the facts and circumstances presented, no objectively good reason exists to doubt the impartiality of our decision in this case. The claims asserted against Judge Pryor (Counts 2-8 & 13) were either barred clearly by the applicable statute of limitations or were abandoned on appeal. Resolution of these claims was restricted to deciding clean legal issues and involved no credibility determinations or fact-finding with respect to Judge Pryor. That a judicial colleague is named as a defendant in litigation -- without more -- is no grounds for automatic disqualification of every judge on the same court. Guide to Judiciary Policy, Vol. 2B, Ch. 2, Published Advisory Opinion No. 103 (2009) (noting that permitting litigants to trigger automatic disqualification of an entire court by simply naming a judge as a defendant "would permit and might even encourage litigants to manipulate and abuse the judicial process"). Moreover, Plaintiffs' district court assertions -- that recusal is necessary because all Eleventh Circuit judges are "likely [to] have direct or indirect professional ties to Pryor" and that assigning one of Judge Pryor's "immediate judicial colleagues" to this case "violates every notion of fairness one can

17

attempt to conjure" -- are the kinds of "unsupported, irrational, or highly tenuous speculation" that provide no valid basis for recusal.  See Greenough, 782 F.2d at 1558.